ORAL ARGUMENT NOT YET SCHEDULED

Case No. 23-7059

# In the United States Court of Appeals for the District of Columbia Circuit

DARRELL WILCOX AND MICHAEL MCGUIRE, individually and on behalf of the Georgetown University Defined Contribution Retirement Plan and the Georgetown University Voluntary Contribution Retirement Plan,

*Plaintiffs-Appellants*,

v.

GEORGETOWN UNIVERSITY, CHRISTOPHER AUGOSTINI, and GEOFF CHATAS

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Columbia, Case No. 1:18-cv-422, Hon. Amy Berman Jackson

_____

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

_____

| | |
|---|---|
| ELLEN T. NOTEWARE | TODD M. SCHNEIDER |
| ABIGAIL J. GERTNER | JAMES A. BLOOM |
| NATALIE LESSER | SCHNEIDER WALLACE |
| BERGER MONTAGUE PC | COTTRELL KONECKY LLP |
| 1818 MARKET STREET, SUITE 3600 | 2000 POWELL STREET, SUITE 1400 |
| PHILADELPHIA, PA 19103 | EMERYVILLE, CALIFORNIA 94608 |

*ADDITIONAL COUNSEL ON SIGNATURE PAGE*

**ATTORNEYS FOR PLAINTIFFS-APPELLANTS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................ii

GLOSSARY OF DEFINED TERMS ..........................................................v

SUMMARY OF THE ARGUMENT .........................................................1

ARGUMENT .........................................................................................3

I.  Plaintiffs Have Article III Standing to Assert all of Their Claims, Since They Assert Those Claims on Behalf of the Plans ...................3

II. The District Court Erred by Dismissing the Case and Denying Plaintiffs Leave to Amend ................................................................10

    A.  Plaintiffs State a Claim Based on Recordkeeping Fees............10

        1.  The FAC's Allegations About Other University Plans Provides a Meaningful Comparison ...................................10

        2.  The FAC's Numerous Allegations Create a Holistic View of the Plan's Excessive Recordkeeping Fees ...........................15

    B.  The District Court Erred in Dismissing Count II of the FAC, Which Adequately Alleges that Defendants Imprudently Selected the Plans' Investment Options ...................................23

        1.  Defendants Breached Their Fiduciary Duties by Offering an Excessive Number of Investment Options ..........................23

        2.  Defendants Breached Their Fiduciary Duties by Failing to Consider and Investigate Fee Disclosures from the Plans' Service Providers .................................................................25

        3.  Defendants Breached Their Fiduciary Duties by *Misrepresenting* the Variable Annuities..............................27

    C.  Plaintiffs State a Claim Based on Reporting Obligations ........28

CONCLUSION ....................................................................................33

CERTIFICATE OF COMPLIANCE.......................................................35

CERTIFICATE OF FILING AND SERVICE .........................................36

i

## TABLE OF AUTHORITIES

### Cases

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022)..........................................................21, 22

*Boley v. Universal Health Servs.*,
36 F.4th 124 (3d Cir. 2022) ....................................................1, 3, 4, 5

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..........................................................15, 20

*Brown v. MITRE Corp.*,
2023 WL 2383772 (D. Mass. Mar. 6, 2023)........................................13

*Bugielski v. AT&T Servs.*,
76 F.4th 894 (9th Cir. 2023)..............................................................30

*Chao v. Trust Fund Advisors*,
2004 U.S. Dist. LEXIS 4026 (D.D.C. Jan. 20, 2004) ..........................10

*Coppel v. SeaWorld Parks & Ent., Inc.*,
2023 WL 2942462 (S.D. Cal. Mar. 22, 2023) ....................................21

*Coyer v. Univar Sols. USA Inc.*,
2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ....................................13

*Cunningham v. Cornell University*,
2023 U.S. App. LEXIS 30195, ___ F.4th ___ (2d Cir. 2023)
(Document #2028267) ..........................................................................2

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir. 1982)..............................................................10

*Erickson v. Pardus*,
551 U.S. 89 (2007) ............................................................................15

*Feinberg v. T. Rowe Price Grp., Inc.*,
2018 WL 3970470 (D. Md. Aug. 20, 2018) ........................................20

*Henderson v. Emory Univ.*,
252 F. Supp. 3d 1344 (N.D. Ga. 2017) ..............................................12

*Hughes v. Northwestern Univ.*, ("*Hughes I*"),
595 U.S. 170, 142 S. Ct. 737 (2022) ....................................................6

*Hughes v. Northwestern Univ.*, ("*Hughes II*")
  63 F.4th at 632 ............................................................. 16, 17, 22, 24

*Iannone v. Autozone, Inc.*,
  No. 19-cv-2779-MSN-tmp, 2022 U.S. Dist. LEXIS 185251
  (W.D. Tenn. Aug. 12, 2022) .................................................... 5

*In re Sutter Health ERISA Litig.*,
  2023 WL 1868865 (E.D. Cal. Feb. 9, 2023) ........................... 17

*James v. D.C.*,
  869 F. Supp. 2d 119 (D.D.C. 2012) ...................................... 14

*Kelly v. Johns Hopkins Univ.*,
  2017 WL 4310229 (D. Md. Sept. 28, 2017) ........................... 12

*Krutchen v. Ricoh USA, Inc.*,
  2023 WL 3026705 (E.D. Pa. Apr. 20, 2023) ......................... 17

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) ............................................................. 4

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ........................................... 5

*Lucero v. Credit Union Ret. Plan Ass'n*,
  2023 WL 2424787 (W.D. Wis. Mar. 9, 2023) ........................ 13

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ................................................ 14

*Rodriguez v. Hy-Vee, Inc.*,
  2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ..................... 16

*Scott v. J.P. Morgan Chase & Co.*,
  296 F. Supp. 3d 98 (D.D.C. 2017) ....................................... 14

*Stengl v. L3Harris Techs., Inc.*,
  2023 WL 2633333 (M.D. Fla. Mar. 2, 2023) .................... 15, 17

*Taylor v. United Techs. Corp.*,
  2008 WL 2333120 (D. Conn. June 3, 2008) ........................... 5

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ......................................................... 8

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ........................... 4

**Statutes**

29 C.F.R. § 2520.103-1(b)(1)-(2) ...................................................... 30

29 C.F.R. § 2550.408b-2(c)(3) ....................................................... 7, 8

ERISA § 103(a)(1)(A), 29 U.S.C. § 1023(a)(1)(A) ............................ 30

ERISA § 104(a)(1), 29 U.S.C. § 1024(a)(1) ..................................... 31

ERISA § 104(b)(2), 29 U.S.C. § 1024(b)(2) ..................................... 30

ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3) ..................................... 30

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) ..................................... 30

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ........................... 10

ERISA § 409(a), 29 U.S.C. § 1109(a) .......................................... 4, 5, 7

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ............................. 4, 5, 6, 30

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ..................................... 8, 9

**Other Authorities**

Annual Reporting and Disclosure,
    72 FR 64710, 64712 ................................................................ 31

Restatement (Third) of Trusts, §§ 77-79 ........................................ 29

Restatement (Third) of Trusts, § 82(a)(1)(c) .................................. 29

Restatement (Third) of Trusts, § 83 .............................................. 29

Revision of Annual Information Return/Reports,
    72 Fed. Reg. 64731-01, 64739 (Nov. 16, 2007) .......................... 30

**Rules**

F.R.C.P. Rule 12(b)(6) ................................................................. 9

# GLOSSARY OF DEFINED TERMS

- "Complaint" means the original complaint in this matter filed on February 23, 2018. Dkt. # 1.

- "DC Plan" means the Georgetown University Defined Contribution Retirement Plan.

- "Defendants" mean Defendants-Appellees Georgetown University, the Finance Subcommittee of the President's Executive Committee, and Christopher Augostini.

- "ERISA" means the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

- "Motion to Dismiss Opinion" means the district court's opinion dated January 8, 2019 granting Defendants' motion to dismiss the original complaint. Dkt. # 35.

- "FAC" means Plaintiffs' proposed First Amended Complaint – Class Action, filed on December 10, 2021, Dkt. # 58-2, after this Court's decision in Plaintiffs' first appeal.

- "Opinion Denying Leave to Amend" means the district court's March 31, 2023 opinion denying Plaintiffs' post-appeal motion for leave to amend. Dkt. # 76.

- "Plaintiffs" are Plaintiffs-Appellants Darrell Wilcox and Michael McGuire.

- "Plans" or "Georgetown University Plans" refers to the Georgetown University Defined Contribution Retirement Plan (the "DC Plan") and the Georgetown University Voluntary Contribution Retirement Plan (the "Voluntary Plan") collectively.

- "TIAA" means Teachers Insurance and Annuity Association of America.

- "Voluntary Plan" refers to the Georgetown University Voluntary Plan.

## SUMMARY OF THE ARGUMENT

Plaintiffs' Opening brief demonstrated that, consistent with numerous decisions across the country, the detailed factual allegations in Plaintiffs' FAC—that their retirement Plans paid exorbitant recordkeeping, service and investment managements fees out of proportion to the services they received and far higher than the fees paid by other comparable universities and institutional investors with more than $1 billion in assets—are sufficiently plausibe state a claim that Defendants breached their ERISA fiduciary duties under *Hughes v. Northwestern Univ.*, 142 S.Ct. 737 (2022) ("*Hughes I*") and *Tibble* v. *Edison Int'l*, 575 U.S. 523, 530 (2015) ("*Tibble*").

Defendants' arguments that the Plaintiffs lack Article III standing to assert claims about certain funds offered in the Plans lacks any support or merit and conflicts with *Hughes I* and *Boley v. Universal Health Servs.*, 36 F.4th 124 (3d Cir. 2022) since Plaintiffs are proceeding on behalf of the injured Plans.

The District Court's dismissal and decision to deny Plaintiffs' motion for leave to amend were erroneous, and Defendants' arguments in their response brief do not change that. The Plaintiffs' proposed FAC

met the necessary pleading requirements as established by the Supreme Court in *Hughes I* and *Tibble*. But rather than admit the sufficiency of Plaintiffs' allegations, which showed that Defendants violated ERISA's fiduciary duty of prudence in managing the Plans, Defendants urge this Court, like the District Court, to erect novel barriers to bringing claims for ERISA fiduciary breach. But the barriers Defendants seek conflict with the *Hughes I* and *Tibble*, and thus cannot be adopted. The District Court's decisions dismissing the case and denying leave to amend should be reversed and this case should be remanded with instructions to allow Plaintiffs to file their FAC.

## ARGUMENT

**I.    Plaintiffs Have Article III Standing to Assert all of Their Claims, Since They Assert Those Claims on Behalf of the Plans**

Defendants do not dispute that the two named Plaintiffs, both of whom are Plan participants, have standing to file suit on behalf of the Plans alleging that Defendants, who are Plan fiduciaries, breached their ERISA fiduciary duties in the ways in which they selected and monitored Plan investment options and fees. Defendants even concede, as they must, that once a plaintiff has been injured by misconduct that plaintiff has standing "even if the 'relief sought sweeps beyond the [plaintiff's] own injury.'" *See* Appellee's Opposition Brief ("Opp."), at 26, quoting *Boley,* 36 F.4th at 132-33.

Despite these concessions, Defendants claim that the Plaintiffs, who undisputedly have standing as participants in the Plans to challenge Defendants' fiduciary misconduct, somehow lack ***enough*** standing to seek relief for the Plans that goes beyond their own injuries to encompass all the harm to the Plans arising from the Defendants' fiduciary misconduct. Defendants fail to cite a single case that supports their erroneous standing argument.

3

Defendants' argument that the Plaintiffs lack standing because they did not invest in every one of the dozens of funds and annuities that were negatively impacted by Defendants' fiduciary breaches conflicts with *Boley*, 36 F.4th at 132-33. *Boley* is on point and squarely rejected Defendants' standing arguments, as did a host of district court cases from around the country.[1] In contrast to these authorities supporting Plaintiffs' position, it is unsurprising Defendants have been unable to identify even a single case supporting their position (apart from the District Court's decision in this case that prompted this appeal).

Defendants also ignore ERISA §§ 502(a)(2) and 409(a), *codified at* 29 U.S.C. §§ 1132(a)(2) and 1109(a), which authorize ERISA plan participants (such as Plaintiffs) "to bring actions on behalf of a plan to recover for violations of the obligations defined in § 409(a)." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 253 (2008). The fact that Plaintiffs are proceeding on behalf of the Plans to recover the Plans'

---

[1] *See* also Appellants' Opening at 50 n.14, citing *Iannone v. Autozone, Inc.*, No. 19-cv-2779-MSN-tmp, 2022 U.S. Dist. LEXIS 185251, at *23-24 (W.D. Tenn. Aug. 12, 2022). *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016); *Taylor v. United Techs. Corp.*, 2008 WL 2333120, at *2-3 (D. Conn. June 3, 2008); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155-56 (S.D.N.Y. 2017)

losses under §§ 1132(a)(2) and 1109(a), and not as individuals to recover excessive fees from their own accounts, is dispositive.

In an effort to distinguish *Boley*, Defendants argue that the Court should ignore the fact that Plaintiffs' claims are brought on behalf of their Plans under §§ 1132(a)(2) and 1109(a), and just focus on specific aspects of Defendants' plan-wide fiduciary failings. The fact that the Plans, on whose behalf Plaintiffs are proceeding, include both funds and annuities in which Plaintiffs personally invested in addition to other funds and annuities that were negatively impacted by Defendants' fiduciary breaches but that the Plaintiffs did not personally invest in, has no relevance. As the FAC makes clear, Defendants imprudently failed to prudently select and monitor the Plans' investment options and failed to prudently monitor and control the Plans' administrative and investment fees and selected numerous imprudent investment options. Defendants' fiduciary breaches impacted the Plans as a whole, including funds and annuities in which the named Plaintiffs invested as well as other investments in which Plaintiffs did not invest.

The Supreme Court's decision in *Hughes I*, 595 U.S. 170, is fatal to Defendants' attempts to narrow the plan-wide nature of Plaintiffs'

5

claims. In *Hughes*, the Seventh Circuit below had held that the plaintiffs could not challenge imprudent investments included in the plan because other investments in the plan were, the Seventh Circuit thought, prudent. Rejecting the Seventh Circuit's approach, the Supreme Court held that "[t]he Seventh Circuit erred in relying on the participants' ultimate choice over their investments to excuse allegedly imprudent decisions by respondents." *Hughes I*, 595 U.S. at __, 142 S. Ct. at 742. The Court explained that "plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included," and that if a fiduciary fails to remove an imprudent investment from the plan, regardless of which investments the participant invests in, the fiduciary "breach[es] their duty." *Id.* (citing *Tibble*).

Thus a participant's choice over which funds to invest in does not absolve the fiduciaries of their responsibility to the plan to prudently select investment options, and participants have the authority under §§ 1132(a)(2) and 1109(a) to seek relief for their plan for all harm to the plan stemming from fiduciary imprudence. Accordingly, Defendants' attempt to narrow the substantive scope of Plaintiffs' claims fails, and

because, as explained above, Plaintiffs have standing to bring those claims, this Court should reverse.

Defendants also argue that Plaintiffs failed to allege that Wilcox was invested in the Traditional Annuity through the Defined Contribution Plan, but the FAC states explicitly that "Plaintiff Wilcox's account *in the DC Plan* was invested in the TIAA Traditional Annuity…." FAC ¶ 39 (emphasis added). This principle is also highly relevant to Defendants' erroneous challenge to Plaintiff Wilcox's standing to challenge the withdrawal restrictions of the Traditional Annuity on the basis that he did not attempt to withdraw or indicate his desire to retire. A request to withdraw would be futile since it is not permitted by the contract.   And, as alleged, the restrictions clearly violate the provisions of 29 C.F.R. § 2550.408b-2(c)(3).[2]

Defendants thus take the position that a fiduciary can impose *illegal* restrictions on retirement plan participants, and until the participant attempts to take the restricted action, the Constitution of the United States deprives them of the statutory right to "enjoin any act or

_____

[2] No contract is reasonable under § 408(b)(2) "if it does not permit termination by the plan without penalty to the plan on reasonably short notice…."

7

practice which violates any provision of [ERISA]." § 1132(a)(3). Participants should be entitled to challenge illegal plan terms without waiting to see whether or to what extent fiduciaries will enforce those terms. Notably, here, if Plaintiff Wilcox attempted to withdraw his money from the Traditional Annuity, he would be exposed to onerous financial penalties in his retirement savings until the Court determined those penalties were illegal. *See* FAC ¶¶ 60-61, 117, 121,123, 125-126.

Defendants dispute that the Traditional Annuity is subject to the restrictions of 29 C.F.R. § 2550.408b-2(c)(3), misleadingly suggesting that the "TIAA Traditional Annuity is an insurance contract between TIAA and the plan participant, Dkt.35 at 6-7, not a contract between TIAA and the Plans for a necessary service for the plans." Opp. at 31. Defendants' assertion is patently false, as the Traditional Annuity has been consistently listed as a Plan insurance contract and Plan asset on the Plans' 5500s. *See, e.g.*, 2016 Annual Return/Report on Form 5500 for the Voluntary Plan, Docket No. 18-2, at 42 of 53 ("The Plan has fixed annuity contracts with TIAA-CREF, an insurance company, referred to as the TIAA Traditional Annuity...."); and at 46 of 53 (listing the Traditional Annuity as an asset of the Voluntary Plan).

Finally, Defendants erroneously argue that Plaintiffs lack standing to seek injunctive relief under 29 U.S.C. § 1132(a)(3) with respect to the funds and annuities that they themselves did not invest in. Opp. at 30-31 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021)). The Court in *TransUnion* reaffirmed that there is an important distinction in terms of standing between actions for damages and actions seeking injunctive relief. *TransUnion LLC*, 141 S. Ct. at 2210. Plaintiffs are entitled to a prudent lineup of investment choices for their retirement savings in the Plans. The fact that numerous imprudent options are in the Plans currently, even if Plaintiffs have not invested in them now, is sufficient to seek injunctive relief to have those options removed.

Faced with these insurmountable flaws in their standing argument, Defendants, shift to an alternative grounds argument (*see* Opp. at 31) based on Rule 12(b)(6). Defendants offer no reason, argument or explanation for that argument. The allegations in the FAC regarding the Vanguard funds and TIAA Traditional Annuities are sound and plausibly state a claim for relief in light of the Supreme Court's reasoning in *Hughes I* in *Tibble*. *See* FAC ¶¶ 17, 79-83. ERISA's stringent duty of prudence requires fiduciaries to manage plan assets "with the care, skill,

9

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). That is, ERISA fiduciary conduct is not measured against a prudent layperson standard, but against a standard of "a prudent fiduciary with experience dealing with a similar enterprise." *Chao v. Trust Fund Advisors*, 2004 U.S. Dist. LEXIS 4026, *7 (D.D.C. Jan. 20, 2004). ERISA's fiduciary standards are, accordingly, "the highest known to the law." *Id.* at *6 (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982) (Friendly, J.)).

Accordingly, Defendants' standing argument and alternative grounds fail.

## II.    The District Court Erred by Dismissing the Case and Denying Plaintiffs Leave to Amend

### A.    Plaintiffs State a Claim Based on Recordkeeping Fees

#### 1.    The FAC's Allegations About Other University Plans Provides a Meaningful Comparison

In direct response to the District Court's Opinion (ECF No. 36), Plaintiffs supplemented the allegations in their FAC to identify five other university 403(b) plans that have consolidated recordkeeping with a single provider. The FAC alleges that the five other specifically

enumerated, university-sponsored retirement plans sought recordkeeping consolidation based on an understanding that multiple recordkeepers results in higher fees and consolidation benefits participants. FAC ¶¶ 86-104. The FAC's citation to five other plans establishes a factual predicate that demonstrates that Georgetown, by retaining multiple recordkeepers, maintained a costly and ineffective recordkeeping structure. The FAC's citation to the five other similar plans further shows that many other universities recognized the flaws in a multi-recordkeeping structure and sought to remedy such through recordkeeping consolidation. By identifying several similarly situated university 403(b) plans that reduced fees through consolidation and competitive bidding together with the other allegations in the FAC, Plaintiffs state a claim that Defendants breached their fiduciary duties to oversee appropriately the Plans' recordkeeping expenses.[3]

Again ignoring the decisions from numerous federal courts that

---

[3] After the filing of their responsive brief, Defendants submitted as supplemental authority the Second Circuit's affirmance of summary judgment in *Cunningham v. Cornell University*, 2023 U.S. App. LEXIS 30195, ___ F.4th ___ (2d Cir. 2023) (Document #2028267). The Second Circuit's decision in *Cunningham*, on summary judgment, does not support affirmance of the District Court's decision granting a motion to dismiss and denying leave to amend in this case.

have overwhelmingly held that allegations that a university-sponsored 403(b) plan that has, as here, retained multiple recordkeepers, paid them uncapped and excessive revenue sharing fees, and/or failed to use a competitive bidding process to retain their multiple and/or overpaid recordkeepers, state a claim against plan fiduciaries for breach of their ERISA fiduciary duties, Defendants argue that the specific university comparators identified by Plaintiffs in their FAC are inappropriate because Plaintiffs failed to include certain details regarding the other Plans.  Opp. at 37-38.  But that is a matter for expert testimony, not a question of law that can be resolved on a motion to dismiss.

Defendants, like the District Court below, manufacture out of whole cloth the requirement that Plaintiffs allege additional details about the five comparator retirement plans who jettisoned multiple record-keepers. *See e.g.*, *See Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1353 (N.D. Ga. 2017) ("plaintiffs' allegation that a prudent fiduciary would have chosen one recordkeeper instead of three is sufficient to state a claim for relief"); *Kelly v. Johns Hopkins Univ.*, 2017 WL 4310229, at *2 (D. Md. Sept. 28, 2017) ("allegations that a prudent fiduciary would have chosen fewer recordkeepers and run a competitive bidding process for the

recordkeeping services support a breach of fiduciary duty claim").

Other than asserting that Plaintiffs' allegations lack detail, Defendants have no other argument supporting their claim that Plaintiffs' new allegations regarding other university plans are in any way inappropriate. Indeed, the allegations in the FAC describing how other university plans decided to consolidate recordkeeping demonstrate that prudent fiduciaries utilize a single recordkeeper and have migrated to the single recordkeeper structure. FAC ¶¶ 79-104. Defendants allowed the Georgetown Plans to retain multiple recordkeepers who charged the Plans duplicative and excessive fees, and accordingly, breached their duties to play reasonable recordkeeping fees.

Defendants' arguments regarding the lack of detail concerning the scope of services runs afoul settled precedent. As Plaintiffs demonstrated in their Opening brief at 33 & n.11,[4] federal courts across the country have upheld excessive recordkeeping fee claims where a complaint provided even fewer details regarding recordkeeping services than the

---

[4] Citing *Brown v. MITRE Corp.*, 2023 WL 2383772, at *5 (D. Mass. Mar. 6, 2023); *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *5 (N.D. Ill. Sept. 28, 2022); *Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787, at *3 (W.D. Wis. Mar. 9, 2023).

FAC at issue here.

Defendants rely on *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274 (8th Cir. 2022) to argue the FAC lacks sufficient detail regarding the Plans' services, but *Matousek* is inapposite. The court in *Matousek* granted dismissal because "[r]ather than point to the fees paid by other specific, comparably sized plans, the plaintiffs rel[ied] on industry-wide averages." 51 F.4th at 279-80. *Matousek* is distinguishable because Plaintiffs here provide more than just industry-wide averages by including a chart of fees paid by other "specific, comparably sized plans" and caselaw regarding reasonable fees. FAC ¶¶ 86-104.

Finally, in a last-ditch attempt to counter Plaintiffs' allegations, Defendants cite sources outside of FAC, which are relevant to the enquiry on a motion to dismiss or motion for leave to amend.  *See e.g.* Opp. at 41 n.4.   Such references should be disregarded. At the motion to dismiss stage – let alone on a motion to amend – a court is "confined to the four corners of the complaint." *James v. D.C.*, 869 F. Supp. 2d 119, 123 n.2 (D.D.C. 2012). Defendants have made no effort to show that these references are authentic or integral to the Plaintiffs' claims. *See e.g.*, *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017)

(finding that a court should only consider documents outside of the complaint "if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims."). Further, at this stage the Court "must accept as true all of [plaintiffs'] factual allegations." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

2. **The FAC's Numerous Allegations Create a Holistic View of the Plans' Excessive Recordkeeping Fees**

Defendants' attempts to pick apart Plaintiffs' allegations regarding excessive recordkeeping fees is in direct conflict with ERISA's "holistic" pleading standard. *Sweda v. Univ. of Pa.*, 923 F.3d 320, 331 (3d Cir. 2019) (courts should employ a "careful and holistic evaluation" of claims in an ERISA fiduciary breach complaint before concluding they do not state a claim) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.")). In *Hughes I*, the Supreme Court instructed the Seventh Circuit to review the allegations in the complaint "as a whole," *Hughes I*, 142 S. Ct. at 742.

The proposed FAC sets forth an array of comparators that creates a holistic view of imprudence. Read together, the FAC's allegations

15

include: (1) the Plans' inefficient retention of three recordkeepers; (2) the Plans' failure to properly monitor and evaluate TIAA's indirect compensation; (3) descriptions of give other university 403(b)plans that consolidated recordkeeping with a single provider; (4) additional support from studies by independent consultants like Aon Hewitt and Towers Watson demonstrating the cost savings and advantages of recordkeeper consolidation; (5) the NEPC survey of industry-wide average fees, and (6) additional case law support from courts nationwide considering similar allegations. *See* FAC ¶¶62-104; *Hughes v. Northwestern Univ.*, 63 F.4th 615, 632 (7th Cir. 2023) ("*Hughes II*") (holding the plan's ability to eventually achieve a reduction in fees "suggests that Northwestern's recordkeeping fees were unreasonably high and that means to lower such fees were available.").

Defendants' criticism of both the FAC's citation to other university plan comparators and its use of the NEPC survey is contradictory. For instance, as the court in *Rodriguez v. Hy-Vee, Inc.* noted, "[i]t is inconsistent for Defendants, on the one hand, to criticize Plaintiffs for not picking the right comparators from the limited universe (0.1%) of large 401(k) plans with more than $1 billion in assets and 10,000 participants,

16

yet also criticize them for not picking enough comparators based on the entire universe of 401(k) plans, the overwhelming majority (99.9%+) of which are far smaller than the Hy-Vee Plan." 2022 WL 16648825, at *10 (S.D. Iowa Oct. 21, 2022).

Many courts have held industry averages help create the inference of imprudence where, like here, Plaintiffs use industry averages to corroborate other indications the Plans was paying excessive fees. *See e.g., Stengl,* 2023 WL 2633333 at *10 (holding industry wide data alone "cannot carry the day by itself even at the motion to dismiss stage, [but] it at least piques the Court's interest that something may be amiss in the management of the Plan due to the contrasting picture it paints . . . ."). Plaintiffs do not rely on any one factor alone, but instead allege multiple circumstances that, when taken as a whole and viewed in the light most favorable to Plaintiffs, creates the plausible inference of Defendants' imprudence. *See e.g.*, *Krutchen v. Ricoh USA, Inc.*, 2023 WL 3026705, at *2 (E.D. Pa. Apr. 20, 2023) (citing *Hughes II*, 63 F.4th at 621-22) (holding "[a] breach may be plausibly pled where a plaintiff alleges multiple examples of circumstantial imprudence.").

The Plans' high number of participants should have allowed

17

Defendants to negotiate a recordkeeping fee at the low end of the range found in the NEPC study. *See e.g., In re Sutter Health ERISA Litig.*, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023), ("the [Averages] Book shows that those plans averaged a recordkeeping fee of $40, which appears to support Plaintiffs' contentions; if 100 participant plans with only $5 million in assets managed to negotiate a $40 recordkeeping fee, it is unclear why the Plan, with more than 70,000 participants and billions in assets, could not negotiate a much lower fee."). Here the NEPC survey is provided alongside several other allegations of unreasonable recordkeeping fees to demonstrate Defendants' failure to monitor and reduce the Plans' excessive recordkeeping fees.

Defendants' argument that Plaintiffs cannot allege that a recordkeeper other than TIAA could manage annuities (Opp. at 50), is both incorrect and another attempt to pick-apart Plaintiffs' allegations so they are viewed in isolation as opposed to as a holistic whole course of conduct. Plaintiffs do in fact identify numerous private university 403(b) plans that include as investment options both annuities and mutual funds have been able to save millions of dollars by consolidating recordkeeping with a single service provider. Specifically, this includes

18

the LMU 403(b) defined contribution plan (FAC ¶¶ 87-91), the Pepperdine University 403(b) plan (FAC ¶¶ 92-95), the Purdue University 403(b) plan (FAC ¶ 96), the California Institute of Technology TIAA-CREF DC Retirement Plan (FAC ¶¶ 97-98), the University of Notre Dame 403(b) plan (FAC ¶¶ 99-101), and the University of Chicago 403(b) plan (FAC ¶¶ 17, 54, 86).

Regarding Defendants' arguments that asset-based fees do not show imprudence (Opp. at 51), Plaintiffs are not alleging that asset-based fees are a per se violation. Rather, these allegations are another set of facts to support a finding of imprudence. Indeed, Defendants' approval of asset-based fees resulted in unreasonable per participant recordkeeping and administrative expenses. *See* FAC ¶¶ 13-15, 66-69. Specifically, Plaintiffs allege that in 2014, TIAA received at least $2.1 million for recordkeeping ($196 per participant), when the median per participant fee for comparable plans was $70. FAC ¶¶ 13; 71.

This calculation is based on 15 basis points (bps) paid on the Traditional Annuity (FAC ¶ 13 n. 7) but does not include amounts TIAA earned on the investment return of its general account, which Plaintiffs estimate to be a minimum of 1.5% of the total invested in the Traditional

19

Annuity. FAC ¶ 16. Plaintiffs further allege that the Plans paid additional asset-based recordkeeping fees to Vanguard and Fidelity that amounted to $113 per participant in 2015. FAC ¶ 17. Defendants caused DC Plan participants to pay excessive recordkeeping fees in some years in the range of $280 per participant, and participants in the Voluntary Plan to pay roughly $175 per participant. FAC ¶ 20. These additional factual allegations further demonstrate Defendants' imprudence.

Defendants' attempt to distinguish leading ERISA precedent should be disregarded. *See* Opp. at 43-48. As Plaintiffs set forth in their Opening brief, these cases are the leading authority for analyzing ERISA claims and apply here. The vast majority of courts considering allegations of imprudent fiduciary process agree with the Eighth Circuit's ruling in *Braden*, 588 F.3d at 596, that a claim alleging a breach of fiduciary duty may survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably "infer from what is alleged that the process was flawed."

In *Hughes I*, 142 S. Ct. 737, the Supreme Court reconfirmed that there is no heightened pleading standard for ERISA cases, in a case with similar excessive fee allegations as in this case. On remand, the Seventh

Circuit remarked that "[a] court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible—not which side's version is more probable." *Hughes II*, 63 F.4th at 630. With its ruling on remand, the Seventh Circuit in *Hughes II* joined the majority of other circuits in finding allegations similar to the instant matter pass the plausibility standard. The Seventh Circuit court noted "[t]he Third Circuit in [*Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019)] and the Second Circuit in [*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 108 (2d Cir. 2021)]—as well as the other circuits cited above—rejected the reading of *Twombly* and *Iqbal* that [the defendant] advances here." *Id*. at 629. Plaintiffs' robust pleadings meet the Supreme Court's standard set forth in *Hughes I* and followed by courts across the country.

Further, the Seventh Circuit's decision in *Hughes II* explains why *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022), on which Defendants rely, is distinguishable:

> Unlike in *Albert*, plaintiffs here assert "[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to large defined contribution plans like the Plans." So, plaintiffs maintain that the quality or type of recordkeeping services provided by competitor providers are comparable to that provided by Fidelity and TIAA. **Plaintiffs also plead that because recordkeeping**

21

**services are 'commoditized . . . recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans.'** In short, plaintiffs allege that recordkeeping services are fungible and that the market for them is highly competitive. Plaintiffs also contend that $35 per participant was a reasonable recordkeeping fee based on the services provided by existing recordkeepers and the Plans' features. **Unlike the plaintiffs in *CommonSpirit Health*, plaintiffs plead that the fees were excessive relative to the recordkeeping services rendered.**

*Hughes II*, 63 F.4th at 632.

Here, Plaintiffs satisfy the pleading requirement of *Albert* as clarified by *Hughes II*. As in *Hughes II*, Plaintiffs here allege that Defendants caused the Plans' participants "to pay excessive recordkeeping and administration fees in the range of $300 per participant" and that fiduciaries "of similar individual account defined contribution plans cause their participants to pay far less." FAC ¶ 30. Plaintiffs here further allege, as the Seventh Circuit found significant in *Hughes II*, that "[t]he market for recordkeeping services is highly competitive," that there are "numerous recordkeepers in the marketplace capable of providing a high level of service to large defined contribution plans like the Plans," and that "[t]hese recordkeepers primarily

22

differentiate themselves based on price and vigorously compete for business by offering the best price." FAC ¶ 62. Numerous other allegations in the FAC elaborate on why the fees are excessive compared to the services received. *E.g.*, FAC ¶¶ 64-68, 79-85. The FAC's allegations are sufficient for the excessive recordkeeping fee allegations to proceed.

### B. The District Court Erred in Dismissing Count II of the FAC, Which Adequately Alleges that Defendants Imprudently Selected the Plans' Investment Options

#### 1. Defendants Breached Their Fiduciary Duties by Offering an Excessive Number of Investment Options

In *Hughes I*, the Supreme Court rejected Defendants' argument that an excessive number of investment options can never be a fiduciary breach. In particular, the Supreme Court held that the Seventh Circuit erred when it dismissed claims including, similar to those in the FAC, that the plan's fiduciaries "offered too many investment options—over 400 in total for much of the relevant period—and thereby caused participant confusion and poor investment decisions." 142 S. Ct. at 741.

The crux of Defendants' argument is based on a misstatement of the Supreme Court's holding in *Hughes I* and the Seventh Circuit's decision in that case on remand, in *Hughes II*. Opp. at 52-53. Defendants incorrectly state that the Supreme Court left "untouched" the Seventh

Circuit's earlier ruling dismissing claims about the number of investments.

On the contrary, as the Seventh Circuit explained on remand, the Supreme Court held that the plaintiffs stated a claim when they alleged defendants "offered too many investment options … and thereby caused participant confusion and poor investment decisions." *Hughes II*, 63 F.4th at 623. What the Seventh Circuit held was "untouched" by the Supreme Court's opinion were three principles of law previously articulated in earlier cases, none of which bears on the question of the number of investment options. *Id.* at 625-26. Thus the case Defendants cite stands for precisely the opposite conclusion than that for which Defendants cite it.[5]

In light of the Supreme Court's decision in *Hughes I* affirming that providing too many investment options can support a claim for a fiduciary breach, Defendants' other authorities—earlier district court decisions from other jurisdictions that are contrary to *Hughes I*—lack

---

[5] At the critical point in Defendants' brief, at pages 52-53, Defendants also mistakenly cite a page that does not exist in Seventh Circuit's decision on remand. Defendants support their argument by citing "63 F.4th at 637," a page number after the end of the Seventh Circuit's opinion. *See Hughes II*, 63 F.4th 615 (7th Cir. 2023)).

relevance. Plaintiffs' allegations here, that the Defendants imprudently included nearly 400 investment options in the Plans, FAC ¶¶ 73-78, are sufficient to state a claim, especially when these allegations are evaluated "as a whole" with the other allegations in the FAC. *Hughes I*, 142 S. Ct. at 742.

>    **2.    Defendants Breached Their Fiduciary Duties by Failing to Consider and Investigate Fee Disclosures from the Plans' Service Providers**

Defendants completely misapprehend the nature of Plaintiffs' allegations regarding the fee disclosures. Defendants concede that they, as the Plans' fiduciaries, have an obligation to "consider" the information about fees that service providers provide in the mandatory fee disclosures to plan fiduciaries. Opp. at 55. But Defendants disclaim any obligation to "audit" those disclosures. *Id.*

The FAC does not allege that Defendants breached their fiduciary duties by failing to "audit" fee disclosures. Instead, the FAC alleges that Defendants "were obligated to evaluate and analyze the 408b-2 disclosures made by TIAA and ensure they were complete and accurate" and "were also required to perform their own investigation of the compensation that TIAA would be receiving." FAC ¶ 9. The FAC alleges

that this investigation should consider the reasonableness of the fees compared to what comparable service providers charge and in light of the services being provided. *Id*. The FAC also points to specific inaccuracies in TIAA's 408b-2 disclosures, which together underreported the compensation the Plans paid to TIAA by at least hundreds of thousands of dollars every single year. *Id*. ¶ 23(a)-(b). The FAC also alleges that the 408b-2 disclosures put any reasonable fiduciary acting in good faith on enquiry notice of the surrender charge inherent in the TIAA annuities. FAC ¶¶ 123-126.

The FAC does not include a separate cause of action for the failure of the fiduciaries to "audit" the 408b-2 disclosures, as Defendants suggest. Instead, the allegations in the FAC showed that Defendants' failure to monitor the fees the Plans were paying included an imprudent disregard of and failure to investigate the fee disclosures required by the 2012 regulations under 408b-2. These allegations, read together with the other allegations in the complaint, show that Defendants breached their ERISA duty of prudence when they imprudently failed to monitor and manage the Plans' investment options and fees.

Defendants' argument that Plaintiffs have not alleged harm

specifically arising out of Defendants' failures to consider or investigate the 408b-2 disclosures also fails. Opp. at 55. As explained above those allegations are not a free-standing cause of action, but simply support Plaintiffs' allegations that Defendants' breached their fiduciary duties— thus the harm to the Plaintiffs is the same as the harm generally arising from all of Defendants' fiduciary misconduct.

### 3.    Defendants Breached Their Fiduciary Duties by *Misrepresenting* the Variable Annuities

Defendants' argument that they did not act imprudently by "misunderstanding" TIAA's variable annuities lacks merit. Opp. at 57. The allegations in the FAC are not simply that Defendants *misunderstood* the nature of those investment vehicles, but that Defendants' misunderstanding lead them to "misrepresent[]" the nature of those investments *to the Plans' participants*. FAC ¶ 29.

Defendants' contention that Plaintiffs "do not allege any duty that [Defendants] breached" in connection with their representations to Plaintiffs about the annuities, is another example of Defendants' attempts to segregate out these facts as free-standing cause of action. But Plaintiffs do not assert a claim for misrepresenting the nature of the variable annuity, but assert those facts to be read together, as a whole,

with the other allegations in the FAC to show that Defendants' fiduciary process was flawed. Thus, as above, the harm from this aspect of Defendants' fiduciary imprudence was the same harm Plaintiffs allege generally – excessive investment and administrative fees and poorly constructed lineup of investment choices leading to underperformance.

Defendants' response that "there is no duty to tell participants to read an investments' prospectus instead of relying on its name," Opp. at 58, also lacks merit, especially when read together "as a whole" with the other allegations in the FAC. *Hughes I*, 142 S. Ct. at 742. There were nearly 400 investment options in the Plans. FAC ¶¶ 73-78. Read together with the other allegations in the FAC, and not picked apart into isolation, Defendants' argument that the participants should have read every word of every prospectus of every one of the nearly 400 investment options in the Plans is simply unrealistic.

## C. Plaintiffs State a Claim Based on Reporting Obligations

Defendants erroneously claim that ERISA plan fiduciaries do not have an affirmative duty of candor and are only required not to affirmatively lie to participants in the plans they serve. Opp. at 60. They claim that the law of trusts, on which ERISA is based, does not impose a

duty of candor. *Id.* at 59. These assertions are incorrect.

In support of their argument, Defendants cite the Restatement (Third) of Trusts, §§ 77-79 (the "Restatement"). But Defendants fail to cite the relevant sections of the Restatement. Section 82 which is entitled "Duty to Furnish Information to Beneficiaries" states that common law trust fiduciaries have an affirmative obligation to "keep fairly representative beneficiaries reasonably informed of changes involving the trusteeship and about other significant developments concerning the trust and its administration, particularly material information needed by beneficiaries for the protection of their interests." Restatement § 82(a)(1)(c). Similarly, Restatement § 83 describes how fiduciaries have an obligation to keep accurate records and provide reports to beneficiaries.

ERISA obligates each plan's administrator to, each year, prepare and "publish" an annual report which must be filed with the Secretary of Labor and which "shall be made available and furnished to participants…." 29 U.S.C. § 1023(a)(1)(A). Regulations require that those reports must be submitted on Form 5500 and must attach the

29

plan's audited financial statements.[6] 29 C.F.R. § 2520.103-1(b)(1)-(2). The annual report must also "identify in the report any people or entities that received compensation for providing services to the plan, as well as the amount of compensation received." *Bugielski v. AT&T Servs.*, 76 F.4th 894, 899 (9th Cir. 2023) (citing Revision of Annual Information Return/Reports, 72 Fed. Reg. 64731-01, 64739 (Nov. 16, 2007)).

Defendants argue that these annual reports are not meant to be communications to plan participants, but merely communications to the government. Defendants are wrong. The annual report on Form 5500 the primary mechanism for providing financial information about plans *to plan participants*, who have the same enforcement authority as the Secretary of Labor for breaches of ERISA's fiduciary duties under 29 U.S.C. § 1132(a)(2). The plan administrator must make copies of the annual report available in its offices to any participant, 29 U.S.C. § 1024(b)(2), must provide summaries of the annual report each year to participants, § 1024(b)(3), and on request must provide a copy of the latest annual report to plan participants. § 1024(b)(4). The Secretary of

---

[6] The content requirements for annual reports are simplified for plans with less than 100 participants. The Plan at issue here has considerably more than 100 participants.

Labor is also required by statute to make the annual report publicly available. 29 U.S.C. § 1024(a)(1).

The regulations cited in the Plaintiff's Opening Brief, which Defendants do not address in their response, make clear that "[t]he Form 5500 Annual Return/Report *is the primary source of information* concerning the operation, funding, assets and investments of pension and other employee benefit plans … *for plan participants* and beneficiaries." Appellants' Opening Brief at 46, quoting Annual Reporting and Disclosure, 72 FR 64710, 64712 (emphasis added).

Defendants also argue that preparing the Plans' annual reports is not a fiduciary function, but a simple ministerial task. But ERISA defines fiduciaries to include those who administer plans, provided they have discretionary authority or responsibility in doing so. 29 U.S.C. § 1002(21)(A)(iii). The FAC addresses the decision of a plan fiduciary to fail to report indirect compensation, known by those fiduciaries to have been received by plan service providers, and otherwise required to be reported. That is not a mere ministerial act.

Accordingly, Defendants' failures to ensure that the annual reports on Form 5500 included complete and accurate information about the fees

31

paid to service providers was a significant breach of Defendants' fiduciary

obligation to keep the Plans' participants apprised of the major financial

aspects of the Plans.

## CONCLUSION

For the foregoing reasons, the Court should (i) reverse the district court's decision to deny Plaintiffs' motion for leave to amend; and (ii) remand the case to the district court with instructions to grant Plaintiffs leave to file the proposed FAC.

Respectfully submitted,

Dated: December 8, 2023        By:    */s/ James A. Bloom*
Todd M. Schneider
James A. Bloom
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com

Ellen T. Noteware
Abigail J. Gertner
Natalie Lesser
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
enoteware@bm.net
agertner@bm.net
nlesser@bm.net

Eric Lechtzin
EDELSON LECHTZIN LLP
411 S. State Street, Suite N-300
Newton, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com

*Attorneys for the Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    Type-Volume

This document complies with the word limit-volume limitation of Fed. R. App. P. 27(d)(2)(A) and Fed. R. App. P. 32(g)(1) because it contains 6,402 excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.    Typeface and Type-Style

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). because it was prepared in a proportionately spaced typeface using Microsoft Word, in Century Schoolbook 14-point type for text and footnotes.

Dated: December 8, 2023          By: */s/ James A. Bloom*
                                 James A. Bloom

                                 *Counsel for Plaintiffs-Appellants*

35

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on December 8, 2023, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

Dated: December 8, 2023                     */s/ James A. Bloom*
                                            James A. Bloom

                                            *Counsel for Plaintiffs-Appellants*